[No. 36552.   Department One.   August 8, 1963.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT P. KONOP, *Appellant.**

*Fetty & Olwell*, by *David H. Olwell*, for appellant.

*Charles O. Carroll* and *David L. Williams*, for respondent.

OTT, C. J.—May 8, 1961, Robert P. Konop ordered 300 shares of the corporate stock of Thiokol Company from Merrill, Lynch, Pierce, Fenner & Smith, Inc., a brokerage firm in Seattle, and represented that he had sufficient funds to pay the purchase price of $13,323. May 11th, before the stock was delivered or paid for, Konop called the broker and ordered the stock sold at the then market price of $14,078.15.

*Reported in 384 P. (2d) 385.

May 12th, he opened a checking account with the Peoples National Bank by depositing a $25 check drawn on a California bank. May 17th, he placed another order for 300 shares of Thiokol stock, and assured the broker that payment therefor would be no problem. On the same date, he was advised that, although he had made a profit on the May 8th-11th transaction, he could not receive it without first paying the full purchase price for the stock.

He then wrote a check on the Peoples National Bank for $13,323, payable to the brokerage firm. May 18th, he was given a check for the profit on the May 8th-11th transaction, which he refused to accept because he had paid the purchase price by giving his check therefor the previous day. After assuring the operations manager that his check for $13,323 would be paid upon presentation because "he was a reputable business man," he was given a check from the brokerage firm for $14,078.15.

Konop then went to the National Bank of Commerce, where he presented the brokerage firm's check and asked that he be issued a cashier's check in lieu of it. Instead the teller of the bank issued to him three manager's checks, payable to Robert Konop, in the sums of $13,300, $200 and $200, respectively, and gave him the balance in cash. Immediately thereafter, Konop went to the Peoples National Bank and contacted the same employee who had previously opened the checking account for him. He advised her that he had written a substantial check on his account, and offered to deposit the manager's check for $13,300 issued by the National Bank of Commerce, plus $100 in cash. The deposit was refused for the reason that his checking account had been closed when the $25 check he had written upon the California bank was returned marked "account closed."

May 22nd, Konop went to the Bank of California, presented the manager's check for $13,300, and received from that bank five drafts, two for $5,000 each, one for $2,000, one for $1,000, and one for $300, drawn upon a California branch of that bank.

In the interim between May 17th and 22nd, the check written by Konop to the brokerage firm was returned by

the Peoples National Bank, marked "account closed." The firm, on several occasions thereafter, attempted to contact Konop concerning payment of the check, but without success.

September 26, 1961, Robert P. Konop was charged with the crime of grand larceny, as follows:

"He, the said ROBERT P. KONOP, in the County of King, State of Washington, on or about the 18th day of May, 1961, with intent to defraud and deprive the owner thereof, willfully, unlawfully and feloniously did obtain certain personal property in excess of $75.00, to-wit: a check made payable to Robert P. Konop, by the drawer, Merrill, Lynch, Pierce, Fenner and Smith, drawn on the Seattle-First National Bank, Seaboard Branch, the property of the Merrill, Lynch, Pierce, Fenner and Smith, by color and aid of a check or order for the payment of money, knowing that the maker or drawer of such order or check was not authorized to make or draw the same, and by means of false and fraudulent representations and pretenses, and by trick, device and bunco;

"Contrary to the statute in such case made and provided, and against the peace and dignity of the State of Washington."

At the trial before the court, sitting without a jury, the evidence on behalf of the state was essentially as above set out.

The defendant testified that, on May 15th, he was told by the brokerage firm's cashier that he had a credit balance of some $755 as a result of the May 8th-11th transaction. May 17th, he called at the office and was advised by the broker that, because of stock exchange regulations, he could not have the credit balance until he had paid for the stock. He testified that he told the broker he did not have the funds to pay for the stock, and was advised to write a check to the brokerage firm in the amount of the purchase price. He would then receive the firm's check for the sale price, which he could deposit at the bank prior to the presentment of his check. He wrote the check as suggested. May 18th, when he attempted to deposit $13,400 in the Peoples National Bank to cover the check given to the brokerage firm, he was surprised to learn that the Cali-

fornia bank had refused to honor his $25 check, because his last bank statement had indicated a $39 balance. He did not pay the brokerage firm after the bank refused to accept his deposit.

The trial court, after considering the conflicting testimony, found the defendant guilty as charged.

From the judgment and sentence, the defendant has appealed.

Appellant assigns error to the court's refusal to enter his proposed finding of fact No. 8:

"That at the time the defendant made these representations he did not have any specific intent to permanently deprive Merrill-Lynch of the money, but fully intended to deposit their check in the Peoples National Bank of Seattle, Washington to cover the check he had drawn."

Appellant further assigns error to the court's finding of fact No. 7 and conclusion of law No. 2, which are as follows:

Finding of fact No. 7: "That these false and fraudulent representations were made willfully and knowingly by the defendant with the intent to deprive and defraud Merrill-Lynch of its property."

Conclusion of law No. 2: "That the defendant, Robert P. Konop, is guilty of the crime of Grand Larceny as charged in the Information filed herein."

■ Whether one intended, at a specified time, to defraud another of his property is a question of fact to be resolved by the trier of the facts. Where intent to defraud is an element of an offense, the trial court may permit a wide latitude of proof. Any evidence which tends to establish intent to defraud is relevant. *State v. Sedam*, 46 Wn. (2d) 725, 728, 284 P. (2d) 292 (1955), and case cited.

■ In the instant case, all of the elements of the crime of grand larceny were established, unless the appellant's conduct in taking the brokerage firm's check and having it converted to National Bank of Commerce manager's checks, one of which he attempted to deposit with the Peoples National Bank, and that bank's refusal to accept it, conclusively negated other facts and circumstances which tended to establish intent to defraud. The fact that the

appellant attempted to deposit $13,400 with the Peoples National Bank does not nullify the false representations he had previously made which enabled him to obtain the brokerage firm's $14,078.15 check. His testimony that, had the bank accepted his deposit, he would have permitted the check he had written to the brokerage firm to clear the bank, is inconsistent with his immediate subsequent conduct.

The court, in the exercise of its discretion, did not believe the appellant's testimony relative to the means by which he obtained the brokerage firm's check. Instead, the court, after considering all of the circumstances, both prior and subsequent to the issuance of the brokerage firm's check, found as a fact that the element of intent to defraud had been established as of May 18th. The court did not err in this regard.

Finally, appellant contends that, if any crime was proved, the evidence established embezzlement, and that he was, therefore, improperly charged with and convicted of grand larceny.

Embezzlement is, *inter alia*, the lawful acquisition of another's property and a subsequent unlawful appropriation of it. Larceny is the unlawful obtaining of another's property, with a criminal intent at the time of its acquisition. *State v. Johnson*, 56 Wn. (2d) 700, 355 P. (2d) 13 (1960).

In the instant case, the court determined that a criminal intent to defraud the brokerage firm existed at the time appellant obtained its property, as charged in the information. Therefore, the crime of grand larceny was established.

We find no merit in appellant's remaining assignments of error.

The judgment and sentence is affirmed.

HILL, ROSELLINI, HUNTER, and HALE, JJ., concur.