[No. 23740-1-III.   Division Three.   April 11, 2006.]

*In the Matter of the Personal Restraint of* JORGE VALENZUELA FONSECA, *Petitioner.*

*Richard G. Wernette* (of *McAdams, Ponti & Wernette, P.S.*), for petitioner.

*James L. Nagle, Prosecuting Attorney*, for respondent.

¶1 BROWN, J. — Jorge Valenzuela Fonseca seeks relief from personal restraint imposed for his 2004 Walla Walla County conviction upon plea of guilty to delivery of methamphetamine. He contends he did not enter a knowing, voluntary, and intelligent plea because he was not apprised of a direct consequence that he was ineligible for a sentence under the drug offender sentencing alternative (DOSA). RCW 9.94A.660. We agree and remand for the purpose of allowing Mr. Fonseca the opportunity to elect between plea withdrawal and specific performance.

## FACTS

¶2 Mr. Fonseca agreed to plead guilty to one count of delivering methamphetamine in exchange for the dismissal of other charges. Paragraph 6(a) of his signed statement on

plea of guilty indicates his standard range sentence is 60-120 months, based upon an offender score of 6. Paragraph 6(s) states that the judge may sentence Mr. Fonseca under the DOSA option, if he qualifies. The State agreed to recommend a 72-month sentence and not oppose the DOSA.

¶3 Early in his plea hearing on August 9, 2004, Mr. Fonseca asked the court for a DOSA sentence. The court stated it would be addressed at the appropriate time. The court then discussed with Mr. Fonseca the plea agreement terms and the rights he was giving up. The court verified his understanding that even if he qualified for a DOSA sentence the court did not have to grant him that option. The court explained, "All I need to do is consider the facts and make a determination as to whether or not I think you should receive it." Report of Proceedings (RP) (Aug. 9, 2004) at 6. Mr. Fonseca pleaded guilty to the crime, and the court accepted the plea as knowing, voluntary, and intelligent. The court then concluded, "I will order that you be evaluated for the DOSA program. . . . [a]fter that has been completed, [defense counsel] will notify you and notify the Court, and we'll then set the matter up for sentencing." RP (Aug. 9, 2004) at 9.

¶4 But prior to the August 25 sentencing hearing, it was discovered that Mr. Fonseca's correct offender score was rounded down to 5, with a corresponding standard range of 20-60 months. At the sentencing hearing, Mr. Fonseca acknowledged understanding that with the lower offender score his 60-month maximum standard range was reduced to less than the 72 months originally recommended by the State. Mr. Fonseca's attorney explained a DOSA was likely not available for Mr. Fonseca at that time due to immigration issues and requested the court to impose the 20-month low-end of the standard range. The deputy prosecutor recommended "60 months pursuant to the plea agreement." RP (Aug. 25, 2004) at 4. Mr. Fonseca was not given an option to withdraw his guilty plea. During allocution, he pleaded for drug treatment. The court imposed a 60-month sentence.

¶5 Although defense counsel perceived deportation fore-closed a DOSA, all involved were apparently unaware of Mr. Fonseca's DOSA ineligibility under RCW 9.94A.660(1)(b) due to his two prior convictions for first degree burglary—a class A felony and violent offense. RCW 9A.52.020(2); former RCW 9.94A.030(44)(a)(i) (2001) (now RCW 9.94A.030(45)(a)(i)). Both the prosecutor's statement of criminal history appended to the statement on plea of guilty and the judgment and sentence document mistakenly stated that the first degree burglaries were nonviolent offenses.

¶6 Mr. Fonseca timely filed this personal restraint petition contending he should be allowed to withdraw his guilty plea because,."I was sentenced to a plea I never signed and didn't know what was happening in court when sentenced. I was being sentenced under '6' points with a DOSA package when I signed my plea bargain. At my sentencing the [prosecutor] and my attorney talked about my points sentencing me to five giving me the max. [sic] of my standard range." Pers. Restraint Pet. at 3. This court allowed Mr. Fonseca's petition to be heard to analyze whether he entered a knowing, voluntary, and intelligent plea.

## ANALYSIS

¶7 The issue is whether Mr. Fonseca should be allowed to withdraw his guilty plea as involuntary because he lacked knowledge from the outset that he was ineligible to receive a DOSA sentence.

¶8 This is a personal restraint petition (PRP). To prevail in a PRP, Mr. Fonseca must show, by a preponderance of the evidence, actual and substantial prejudice resulting from alleged constitutional errors or, for alleged nonconstitutional errors, a fundamental defect that inherently results in a miscarriage of justice. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990); *see also In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 298, 300, 88 P.3d 390 (2004).

¶9 Due process requires a knowing, voluntary, and intelligent guilty plea. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *Isadore*, 151 Wn.2d at 297. A guilty plea is not knowingly made if based on misinformation as to the sentencing consequences. *State v. Miller*, 110 Wn.2d 528, 531, 756 P.2d 122 (1988). A defendant must be informed of all direct consequences of the plea. *Isadore*, 151 Wn.2d at 298 (citing *State v. Ross*, 129 Wn.2d 279, 284, 916 P.2d 405 (1996)).

¶10 Under CrR 4.2(f), a court must allow a defendant to withdraw a guilty plea if necessary to correct a manifest injustice. An involuntary plea produces a manifest injustice. *Isadore*, 151 Wn.2d at 298 (citing *Ross*, 129 Wn.2d at 284; *State v. Walsh*, 143 Wn.2d 1, 8, 17 P.3d 591 (2001) (mutual mistake regarding sentencing consequences renders guilty plea invalid)). A "direct" consequence includes one that " 'represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.' " *Ross*, 129 Wn.2d at 284 (quoting *State v. Barton*, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980)).

¶11 The DOSA statute, former RCW 9.94A.660 (2002), partly provides:

> (1) An offender is eligible for the special drug offender sentencing alternative if:
>
> . . . .
>
> (b) The offender has no current or prior convictions for a sex offense or violent offense in this state, another state, or the United States;
>
> . . . .
>
> (d) The offender has not been found by the United States attorney general to be subject to a deportation detainer or order and does not become subject to a deportation order during the period of the sentence.
>
> (2) If the standard sentence range is greater than one year and the sentencing court determines that the offender is eligible for this alternative and that the offender and the community will benefit from the use of the alternative, the judge may waive imposition of a sentence within the standard

sentence range and impose a sentence that must include a period of total confinement in a state facility for one-half of the midpoint of the standard sentence range . . . .

The court shall also impose:

(a) The remainder of the midpoint of the standard as a term of community custody which must include appropriate substance abuse treatment in a program that has been approved by the division of alcohol and substance abuse of the department of social and health services;

. . . .

Former RCW 9.94A.660.

¶12 We have found no published opinion stating a DOSA is a direct sentencing consequence. Ineligibility for the special sex offender sentencing alternative program is an analogous example of a direct consequence. *See State v. Kissee*, 88 Wn. App. 817, 822, 947 P.2d 262 (1997). In the sense that a DOSA sentence directly reduces the defendant's prison time by one-half of the midpoint of the standard range, DOSA ineligibility is a direct consequence.

¶13 Our facts show mutual mistake. When Mr. Fonseca pleaded guilty, the parties and the court were unaware he was ineligible for DOSA due to his prior first degree burglary violent offense convictions. Moreover, although Mr. Fonseca was likely aware of the immigration impediment because of his counsel's advice, based upon this record, Mr. Fonseca had the mistaken belief that if he could resolve the immigration problems, he could receive a DOSA sentence. In these circumstances, under *Ross* and *Walsh*, his plea was not intelligent or voluntary and constitutes a manifest injustice. His plea is invalid and his restraint unlawful. *Isadore*, 151 Wn.2d at 300, 302.

¶14 In this situation, Mr. Fonseca has the initial choice to withdraw his plea or ask for specific performance. *See State v. Turley*, 149 Wn.2d 395, 399, 69 P.3d 338 (2003) (citing *Miller*, 110 Wn.2d at 536). The State then bears the burden of showing that the chosen remedy is unjust and compelling reasons exist to not allow that remedy. *Turley*, 149 Wn.2d at 401; *Miller*, 110 Wn.2d at 535.

¶15 Accordingly, we grant Mr. Fonseca's personal restraint petition to the extent that the matter is remanded to the trial court for further proceedings consistent with this opinion. In light of our analysis thus far, we need not examine Mr. Fonseca's other contentions.

KATO, C.J., and THOMPSON, J. PRO TEM., concur.