IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38533-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LLOYD EDWIN HERNDON, II, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Lloyd Herndon appeals his conviction for assault in the second degree—domestic violence, which followed his plea of guilty to that charge. For the first time on appeal, he contends the trial court was not presented with a factual basis for his plea as required by CrR 4.2(d), a rule violation that he argues deprived him of due process. In a pro se statement of additional grounds (SAG), he contends that in entering the plea, he relied on information that the victim had agreed to a mental health sentencing alternative the State had agreed to recommend at sentencing. At sentencing, however, the victim objected to the sentencing alternative and the court declined to impose it.

Mr. Herndon's brief fails to demonstrate that a factual basis for his plea was lacking. While the issue raised in his SAG identifies a mistake that could arguably make his guilty plea involuntary, controlling case law holds that he waived a right to withdraw his plea by not requesting that remedy upon learning of the misunderstanding.

We affirm.

No. 38533-7-III
*State v. Herndon*

FACTS AND PROCEDURAL BACKGROUND

In June 2021, the State charged Mr. Herndon with one count of assault in the second degree—domestic violence. The information, in its caption, identifies RCW 9A.36.021(1)(e) as the basis for the assault charge. RCW 9A.36.021(1)(e) applies to assault "[w]ith intent to commit a felony."

The body of the information alleged that "[o]n or about the 1st day of June, 2021, in the County of Adams, State of Washington, the above-named Defendant, *with intent to commit a felony, did assault another person*, to-wit . . . ." Clerk's Papers (CP) at 7 (emphasis added). In apparent error, it continued, "contrary to Revised Code of Washington 9A.36.021*(1)(c).*" *Id.* (emphasis added). RCW 9A.36.021(1)(c) applies to "[a]ssault[ing] another with a deadly weapon." There is no evidence the defense ever noted or questioned this inconsistency in the trial court.

In the fall of 2021, the parties reached a plea agreement. In their written agreement, Mr. Herndon agreed to plead guilty "[a]s charged in Count 1 of the . . . original . . . information," with a special finding of domestic violence. CP at 47. The prosecutor agreed to recommend that the court impose a then-recently enacted mental health sentencing alternative codified at RCW 9.94A.695.

2

No. 38533-7-III
*State v. Herndon*

The parties stipulated that the real and material facts for the purpose of sentencing were those set forth Mr. Herndon's statement of defendant on plea of guilty. Mr. Herndon provided the following facts in that statement:

> 11. The judge has asked me to state what I did in my own words that makes me guilty of this crime, including enhancements and domestic violence relationships, if they apply. This is my statement:
>
> On June 1, 2021, in Adams County, Washington, while I intended to commit a felony theft, I assaulted a family or household member.

CP at 61.

At the hearing on whether to accept the guilty plea, the prosecutor told the court that the resolution reached was unique in the sense that Mr. Herndon would be asking to be sentenced under the new mental health sentencing alternative. He said that personnel of his office had spoken to the victim, who "is on board with this resolution." Report of Proceedings (RP) at 19. The prosecutor expressed his own view that "this is a good alternative in this case." *Id.*

The court's questioning of Mr. Herndon before accepting his guilty plea included the following:

> THE COURT: Mr. Herndon, I have two documents, both of which appear to bear your signature. A Statement of Defendant on Plea of Guilty and a Felony Plea Agreement. Did you read both of these documents over with your attorney? And did you understand them?
>
> MR. HERNDON: Yes, Your Honor.
>
> . . . .

3

THE COURT:  Mr. Herndon, what is your plea, guilty or not guilty, to the charge of assault in the second degree with domestic violence?

MR. HERNDON:  Guilty.

THE COURT:  Do you make said plea freely and voluntarily?

MR. HERNDON:  Yes, Your Honor.

THE COURT:  At [p]aragraph eleven there is a statement.  It reads as follows: On June 1, 2021, in Adams County, Washington, while I intended to commit a felony theft, I assaulted a family or household member.  Is that your statement, sir?

MR. HERNDON:  Yes, Your Honor.

THE COURT:  Is it a true statement?

MR. HERNDON:  Yes, Your Honor.

THE COURT:  I find the defendant's plea of guilty to be knowingly, intelligently, and voluntarily made.  He understands the charge, the consequences of his plea.  There is a factual basis for his plea.  I find him guilty as charged.

RP at 20-21.

Mr. Herndon was sentenced a week later.  As agreed, the prosecutor recommended that the court impose the mental health sentencing alternative, at the same time acknowledging that the evaluation by the Department of Corrections was "a little ambivalent on their support."  RP at 25.  In concluding his oral recommendation, the prosecutor stated, "When we entered this the [sic] victim was on board.  It was my understanding, expressed to me [by] our victim advocate at the time, that she was on board.  So, we've reached this resolution."  RP at 25-26.  The prosecutor added that the victim was present, however, and wished to address the court.

4

Invited to speak by the court, the victim related that she had been in a relationship with Mr. Herndon for three years and felt she "became a victim to his mental and physical abuse" during that time. RP at 26. She stated that the charged offense was not Mr. Herndon's first assault and spoke at some length about the violence Mr. Herndon exhibited during their relationship. She said, "I ask, I beg of you, to not allow this man to get a lower sentence but the maximum time you can give him. He is a monster who deserves to be punished for every time he has broken a woman or a home." RP at 28.

When she finished, the court sought clarification on whether she had supported the proposed sentencing alternative:

> THE COURT: Madam, you just asked me to sentence this man to the maximum I could sentence him to. The prosecutor just told me that you are in favor, or expressed that you were in favor of the mental health treatment option.
>
> [VICTIM]: I was not.
>
> THE COURT: Are you not?
>
> [VICTIM]: I was not and I told him that today when I came in. He said it was a miscommunication between his old person that was in there and me. Now, I was never in agreement for him to get this.
>
> THE COURT: I understand. Thank you, madam.

RP at 29.

Defense counsel addressed the court next and repeated the prosecutor's report that the victim's advocate told the parties that the victim was in support of the sentencing alternative. Notwithstanding the victim's announced position, defense counsel argued at

5

length that Mr. Herndon was a good candidate for the sentencing alternative,

characterizing his client as receptive to counseling and medication to treat his mental

diagnoses, and as demonstrating accountability by entering a guilty plea.

When Mr. Herndon was invited to speak, he expressed shame and remorse for his

actions, stated that his mental health had played a role, and requested the sentencing

alternative.

In announcing its sentence, the court began by addressing the victim's position:

> Ordinarily I am very, very willing to consider treatment alternatives. In this
> case, the statute specifically says that the Court shall consider the victim's
> opinion whether the defendant should receive a sentence under this section.
> To me that highlights the victim's opinion as a factor in the Court's
> consideration and the Legislature must have added that special language for
> a reason.
> I do not believe that either attorney in this case misrepresented the
> victim's opinion and I don't fault either attorney in this case. But the
> victim testified that her primary fear is that he will come back to harm her.
> That is justifiable because his criminal history includes two protection order
> violations, both felonies.

RP at 38-39. Rather than impose the sentencing alternative, the court imposed a midpoint

sentence of 50 months' confinement.

Mr. Herndon appeals.

## ANALYSIS

Mr. Herndon's brief assigns error to the trial court's acceptance of a guilty plea

that "does not comply with the requirements of CrR 4.2(d) and contravenes the due

6

process clause of the Fourteenth Amendment to the United States Constitution and Const. art. I, §§ 3 and 22." Br. of Appellant at 1. Yet the only issue he identifies in his opening brief is whether a sufficient factual foundation was provided for the guilty plea and, if not, whether his conviction should be vacated. Elsewhere, he states that the issue is whether, "in the absence of the factual predicates necessary to substantiate the charge[, the plea] is invalid." *Id.* at 9. He supports his contention that the court was not presented with a factual basis for the plea with two arguments: first, that "the Information charges an erroneous subparagraph of RCW 9A.36.021," and second, that Mr. Herndon's statement of the facts that made him guilty "amounts to nothing other than an admission to fourth degree assault." Br. of Appellant at 10. Significantly, Mr. Herndon does not contend in his brief that the trial court accepted a plea that was not knowing, voluntary, and intelligent.

The State's threshold response to the "no factual basis" challenge is that it is a nonconstitutional challenge being made for the first time on appeal, and we should apply RAP 2.5(a) and decline to review it. The State also contests the two bases on which a factual basis was allegedly lacking.

Mr. Herndon replies that the error assigned has constitutional implications and can be raised for the first time on appeal under either RAP 2.5(a)(2) or (3).

The State's issue preservation challenge is well-taken, but it is sometimes more expeditious to dispense with an alleged error on its merits than to analyze an appellant's arguments under RAP 2.5(a)(2) and (3). It is more expeditious to reject Mr. Herndon's claim of error on the merits here.

1. The information's inconsistent references to two subsections of RCW 9A.36.021 does not prevent Mr. Herndon's guilty plea statement from serving as a factual basis for his plea

CrR 4.2(d) requires that "[t]he court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." The rule's requirement protects defendants who are in the position of voluntarily pleading guilty with an understanding of the nature of the charge, but who do not realize that their conduct does not actually fall within the charge. *In re Pers. Restraint of Crabtree*, 141 Wn.2d 577, 585, 9 P.3d 814 (2000).

Among means by which an individual can commit second degree assault are (under circumstances not amounting to assault in the first degree) either "[a]ssault[ing] another with a deadly weapon," which is made criminal by RCW 9A.36.021(1)(c), or, "[w]ith intent to commit a felony, assault[ing] another," which is made criminal by RCW 9A.36.021(1)(e). As recounted above, the information filed against Mr. Herndon cited subsection (e) of the statute in its caption and the body of the information alleged that "the above-named Defendant, *with intent to commit a felony*, did assault another

8

person," but that sentence continued, inconsistently, "contrary to Revised Code of Washington 9A.36.021*(1)(c)*." CP at 7 (emphasis added).

Mr. Herndon's statement of plea on guilty described the crime to which he was pleading guilty as only "Assault in the Second Degree—Domestic Violence." CP at 51. It stated that the crime's elements were "as contained in the Information." *Id.* Mr. Herndon's handwritten explanation of what made him guilty was that, on the date and place charged, "while I intended to commit a felony theft, I assaulted a family or household member." CP at 61.

Given that the statement on plea of guilty identifies the crime generically as "Assault in the Second Degree," we can see where Mr. Herndon's explanation of what made him guilty would provide an insufficient factual basis if he was charged and convicted of a means of second degree assault *other than* RCW 9A.36.021(1)(e). But the information before the court when it accepted the plea was overwhelmingly that he was pleading guilty to a violation of RCW 9A.36.021(1)(e).

While the State acknowledges a citation error in the information, it points out that this single error is offset not only by the correct statutory citation in the caption but more importantly, by the consistent description of the offense as being an assault "with intent to commit a felony" in (1) the information, (2) Mr. Herndon's statement of the real and material facts in the statement on plea of guilty, and (3) the colloquy with the

court when accepting the plea. *See* RP at 21. Mr. Herndon's judgment and sentence entered a week later was also consistent, convicting him of second degree assault under RCW 9A.36.021(1)(e).

Notably, Mr. Herndon does not challenge the sufficiency of the charging document. If he had, what is required is a plain, concise and definite written statement of the *essential facts* constituting the offense charged. CrR 2.1(a)(1). While the information must state the official or customary citation of the statute the defendant is alleged to have violated, error in the citation or its omission is not ground for dismissal of the information or reversal of a conviction if the error did not mislead the defendant to his prejudice. CrR 2.1(a)(1); *State v. Borrero*, 97 Wn. App. 101, 107 & n.21, 982 P.2d 1187 (1999), (citing *State v. Vangerpen*, 125 Wn.2d 782, 787-88, 888 P.2d 1177 (1995)), *adhered to on remand*, noted at 103 Wn. App. 1045 (2000).

2.      Mr. Herndon does not demonstrate that his guilty plea statement "amounts to nothing other than an admission to fourth degree assault"

Mr. Herndon's remaining challenge to the factual basis for his plea is that his handwritten statement of the facts "amounts to nothing other than an admission to fourth degree assault." Br. of Appellant at 10.

"A person is guilty of assault in the fourth degree if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another." RCW 9A.36.041(1). To repeat, assault in the second degree under

10

RCW 9A.36.021(1)(e) is committed when a person, in circumstances not amounting to assault in the first degree, "[w]ith intent to commit a felony, assaults another." Of note, Mr. Herndon's agreed criminal history reveals that before pleading guilty in this case, he had been convicted of both second and fourth degree assault: he was convicted of second degree assault in 2008, and fourth degree assault in 2012 and 2013.

Again, Mr. Herndon's handwritten statement of the facts that made him guilty was, "On June 1, 2021, in Adams County, Washington, while I intended to commit a felony theft, I assaulted a family or household member." CP at 61. Since that statement amounts to second degree assault, it could not constitute a fourth degree assault.

Mr. Herndon argues, however, that "[e]ven though the . . . statement references . . . an attempt to commit theft, the degree of theft is not identified. Therefore, it does not fit within the parameters of second-degree assault . . . ." Br. of Appellant at 11. Yet, as the State points out, Mr. Herndon's statement does more than speak of an intent to commit theft, it speaks of "intend[ing] to commit a *felony theft.*" CP at 61 (emphasis added). The guilty plea statement was not required to identify the degree of felony theft. Br. of Resp't at 24 (citing *In re Pers. Restraint of Ness*, 70 Wn. App. 817, 821, 855 P.2d 1191 (1993) (citing, in turn, *In re Pers. Restraint of Hews*, 108 Wn.2d 579, 596, 741 P.2d 983 (1987) ("The constitution does not require that a defendant admit to every element of the charged crime in order to enter a valid guilty plea, but necessitates merely that the

defendant understand the critical elements of the crime and admit to conduct which satisfies those elements.")), *abrogated on other grounds by State v. Buckman*, 190 Wn.2d 51, 60-61, 409 P.3d 193 (2018)).

Mr. Herndon admits that his guilty plea statement was not required to identify a specific felony. Reply Br. at 9. He argues, however, that "if the matter had proceeded to trial" the State would have been required to establish his intent to commit a felony degree of theft (first or second degree theft), since third degree theft is a gross misdemeanor. Br. of Appellant at 9-10. This is a non sequitur. In accepting the plea, the trial court was not conducting a trial. *Cf.*, *State v. Saas*, 118 Wn.2d 37, 43, 820 P.2d 505 (1991) ("In determining whether a factual basis exists for a plea, the trial court need not be convinced beyond a reasonable doubt that the defendant is in fact guilty.").

Mr. Herndon concludes the argument in his opening brief by identifying "two cases that discuss situations similar to his case": *State v. Zumwalt*, 79 Wn. App. 124, 901 P.2d 319 (1995), and *State v. Arnold*, 81 Wn. App. 379, 914 P.2d 762 (1996). Br. of Appellant at 15. *Zumwalt* addresses the proposition that a guilty plea statement may not simply parrot the information with conclusions of law. Emblematic of the problem with mere conclusions of law are *Zumwalt* and *State v. Powell*, 29 Wn. App. 163, 627 P.2d 1337 (1981). In *Zumwalt*, the court held that statements that Zumwalt was "'armed with a deadly weapon'" and was guilty of the "'deadly weapon enhancement'" were legal

conclusions and lacked content that would establish a factual basis for accepting a plea to the enhancement. 79 Wn. App. at 130-31. In *Powell*, the defendant's handwritten statement, "'I did participate in the 1 [degree] murder of Charles Allison'" could not fulfill the factual basis requirement of CrR 4.2(d). 29 Wn. App. at 167 (alteration in original). *Arnold*, the other case cited by Mr. Herndon, is entirely unhelpful. Mr. Herndon cites to only dicta that describes a general need to scrutinize plea statements, in a case where this court found an adequate basis for Arnold's plea. 81 Wn. App. at 384-85.

While a guilty plea statement must amount to more than a legal conclusion, the mere fact that it employs legal words of art is not disqualifying; what matters is that the court is satisfied that it evinces the defendant's understanding of the relationship between the law and the underlying facts. *State v. Heaps*, 36 Wn. App. 718, 725, 677 P.2d 1141 (1984). In *Heaps*, the guilty plea statement was that at a particular date and place, defendant did "'willfully and unlawfully fraudulently make, alter and forge a check.'" *See id.* This court held that the trial court could reasonably find those to be common terms within a layman's understanding.

Here, Mr. Herndon had an agreed criminal history comprising past convictions of 7 felonies and 17 misdemeanors, so the trial court could reasonably view him as someone with an understanding of the distinction between felonies and lesser crimes. And

13

Mr. Herndon's criminal history included a conviction of third degree theft, the only

nonfelonious degree of theft, so he was aware of the low dollar value threshold that

would prevent a theft from being a felony.

Mr. Herndon fails to demonstrate that the trial court was not presented with a

factual basis for his plea.

STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds, Mr. Herndon states that he relied on

information that the victim had agreed to the mental health sentencing alternative, that he

was aware the statute requires the court to consider the victim's wishes, and "therefore, I

agreed to the plea agreement." SAG at 1. He does not identify the relief he is seeking,

but presumably he seeks to withdraw his guilty plea. The court may allow a defendant to

withdraw his plea of guilty whenever it appears necessary to correct a manifest injustice.

CrR 4.2(f).

Due process requires a knowing, voluntary, and intelligent guilty plea. *Boykin v.*

*Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *In re Pers.*

*Restraint of Isadore*, 151 Wn.2d 294, 297, 88 P.3d 390 (2004). A defendant may

challenge the voluntariness of a plea based on misinformation about a direct sentencing

consequence. *State v. Weyrich*, 163 Wn.2d 554, 557, 182 P.3d 965 (2008). In

*In re Personal Restraint of Fonseca*, 132 Wn. App. 464, 469, 132 P.3d 154 (2006), this

court held that where the parties to a plea agreement were mutually mistaken about the defendant's possible eligibility for a drug offender sentencing alternative—being unaware that some prior burglary convictions made him ineligible—the mistake concerned a direct sentencing consequence. And this was so even though Fonseca was aware that there was also an immigration impediment to his eligibility, although that was a problem he might have been able to resolve. *Id.* The court likened Fonseca's circumstances to those in *State v. Kissee*, 88 Wn. App. 817, 822, 947 P.2d 262 (1997), in which the court held that Kissee's misunderstanding that he was eligible for a special sex offender sentencing alternative was a direct sentencing consequence. As observed by this court, Kissee's mistaken belief in his eligibility (a belief shared by the prosecutor, defense counsel, and the trial judge) would produce a definite, immediate and automatic effect on his range of punishment. *Id.*

Here, Mr. Herndon's knowledge that the prosecutor would recommend the sentencing alternative and his belief that the victim would support it presented him with a favorable prospect for a lower range of punishment. The withdrawal of the victim's support did not render Mr. Herndon *ineligible* for the sentencing alternative, but it certainly diminished his prospects that it would be imposed.

We need not decide whether the misunderstanding was enough to render Mr. Herndon's guilty plea involuntary, because case law holds that by not moving to

15

withdraw his plea when the victim's true position came to light, he has waived the right to withdraw it.

A motion to withdraw a plea can be made after judgment, in which case it is governed by CrR 7.8. CrR 4.2(f). In *State v. Mendoza*, 157 Wn.2d 582, 592, 141 P.3d 49 (2006), however, our Supreme Court held that the defendant in that case waived the right to challenge his plea where he was informed of a miscalculation of his offender score before sentencing and did not seize the opportunity to move to vacate the plea at that time. In *State v. Blanks*, 139 Wn. App. 543, 550, 161 P.3d 455 (2007), *review denied*, 163 Wn.2d 1046 (2008), the defendant, trying to distinguish *Mendoza*, argued that he should not be deemed to have waived his right to challenge a plea where sentencing immediately followed entry of his plea. He argued he was not given enough time to withdraw his plea. This court disagreed, observing that "*Mendoza* requires only the 'opportunity to withdraw the plea,' not a waiting period." *Id.* at 550 (citing *Mendoza*, 157 Wn.2d at 591).[1]

---

[1] To the same effect, *see State v. Barnes*, Nos. 71144-0-I, 71145-8-I, slip op. at 6 (Wash. Ct. App. Nov. 24, 2014) (unpublished), https://www.courts.wa.gov/opinions /index.cfm?fa=opinions.showOpinion&filename=711440MAJ (After learning that the term of community custody had been misrepresented, "both [Barnes] and his attorney had an opportunity to address the court. Either could have asked the court to allow Barnes to withdraw his plea . . . but neither did so.").

The decision has no precedential value, is not binding on any court and is cited only for such persuasive value as its adherence to *Blanks* supports. *See* GR 14.1.

No. 38533-7-III
*State v. Herndon*

Here, the victim's disapproval of the sentencing alternative was raised at the virtual inception of the sentencing. Both defense counsel and Mr. Herndon addressed the court thereafter. Rather than request leave to withdraw Mr. Herndon's guilty plea, both continued to advocate for the sentencing alternative. Under *Mendoza* and *Blanks*, the option of withdrawing the plea on account of the misunderstanding was waived.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, C.J.

WE CONCUR:

Fearing, J.

Pennell, J.

17